59 So.2d 456

**SUCCESSION OF PUJOL v. MANNING.**

No. 40239.

April 28, 1952.

Rehearing Denied June 2, 1952.

Joe J. Tritico, Lake Charles, John Fowler, Sulphur, George W. Liskow, Lake Charles, for plaintiffs-appellants.

Edwin F. Gayle and Fred C. Selby, Lake Charles, for defendant-appellee.

MOISE, Justice.

This is a suit by several of the collateral heirs contesting the validity of the olographic will of Miguel Pujol, wherein Charles J. Manning, defendant, was named universal legatee and sent and put in possession of the entire estate of the decedent. From the judgment dismissing their demands, the plaintiffs appeal.

Miguel Pujol died on October 11, 1948 leaving neither ascendants nor descendants. His last will and testament, which was written in pen and ink on one side of a ruled sheet of letter-size paper, reads:

> "March 28, 1936
> "Its my will that my nephew, Charles J. Manning get all my property and all I own.
> Miguel Pujol."

Upon application of Charles J. Manning this will was admitted to probate, the pro-

bating witnesses being Necia M. Hebert and Betty M. Hebert, and ordered registered and executed.

After judgment of possession was rendered, plaintiffs brought suit attacking the will on the grounds that it was "a forgery, as the deceased Miguel Pujol did not know how to write, read, nor sign his name on the date said instrument is purported to have been written by him, nor did he ever know how to write, read or sign his name, and therefore, could not have made a last will and testament in olographic form." They prayed that the orders probating and ordering the execution of the will be recalled and rescinded on the grounds that they had been obtained through "forgery, fraud, perjury and deceit."

Article 1470 of the Revised Civil Code provides:

"All persons may dispose or receive by donation inter vivos or mortis causa, except such as the law expressly declares incapable".

■ The Code also provides that an olographic will

" * * * must be entirely written, dated and signed by the hand of the testator * * *." (Art. 1588).

*It is subject to no other formality.* All of the formalities required for the validity of an olographic will were strictly complied with. It is, therefore, incumbent upon the plaintiffs to show affirmatively that the alleged nullity of the will resulted from some defect in form or by reason of an incapacity imposed by law, which nullity must be specifically pleaded and proved with reasonable certainty.

The ground for invalidation pleaded was that the olographic will is a forgery and that fraud, deceit and perjury were practiced on the court by the judgment of probate, for the reason that the testator could not read, write nor sign his name.

■ On the trial of the merits, plaintiffs offered evidence in an effort to prove the allegation of forgery. The evidence was weak, unsubstantial and negative in character. The defendant introduced four witnesses who actually saw the deceased date, write and sign his name to the olographic will. This evidence is stronger than the codal requirement as to proof of an olographic will because under the Code, it is sufficient to identify the handwriting of the testator. In the instant case, the probating witnesses actually *saw the decedent in the act of dating, of writing* and *of signing his name to the testament.* These two witnesses likewise heard testator tell Mr. Manning that he wanted him (Manning) to write down a will for him (Pujol) to copy, and decedent said that he wanted to leave Manning all of his property.

It is not necessary for us to go into the documentary evidence offered to refute the allegations of plaintiffs, such as his receiving of checks for the fish he sold, and the endorsements of checks received by him, his maintaining a bank account, his signing

of acts of sale and executing mineral leases, all showing that he knew the meaning of the written words and was capable of understanding what he was doing. After this convincing proof, the plaintiffs abandoned the sole ground on which the will was contested—that of forgery. This put the case at an end because the petition only alleged forgery and the prayer of the petition is that the will be declared a forgery. As a means of aggression, this afterthought that plaintiffs inject, that deceased though writing mechanically did not understand the meaning of each word as he copied from Manning's written form, is inconsistent with the original averment. Such was not pleaded nor prayed for.

It is further argued that the evidence received on the subject of the alleged forgery, without objection, constituted an enlargement of the pleadings and may be considered by the court. This argument has no foundation in fact nor in law. The evidence received was under the issue of forgery and was therefore not susceptible of an objection by the defendant.

In Althans v. Toye Bros. Yellow Cab Co., La.App., 191 So. 717, at page 725, it was stated:

"* * * It is, of course, axiomatic in our jurisprudence that evidence concerning issues not raised in the pleadings, when received without objection, has the effect of enlarging the pleadings so as to include its consideration as an issue in the case. See Sistrunk v. Audubon Park Natatorium, La.App., 164 So. 667, and cases there cited. But it is likewise well settled, as pointed out in the Sistrunk case, that, if such evidence was admissible under and in support of other allegations presented by the pleadings, it may not be said to have had the effect of introducing new issues because the opposing counsel could not have successfully objected to its reception at the time it was tendered. In Choppin v. Dauphin, 112 La. 103, 128, 36 So. 287, 296, the Supreme Court said:

" 'If the evidence was admissible under the pleadings, its admission without objection clearly could not have the effect of enlarging the pleadings.' "

We, therefore, conclude that we as judges cannot bring ourselves to express views as to what the law should be on an issue not raised in the pleadings, nor included in the prayer, in either the original petition or in an alternative demand, because we would be passing on purely a hypothetical issue, injected in the case by a litigant which was not necessary for a decision. In our judgment, a safe rule for the court is to express opinions only as to indispensable matters and not by interpretation to put of record opinions to govern cases which can only be raised in the future when pleaded properly so as to put defendant on guard as to the issue to be met.

For the reasons assigned, the judgment appealed from is affirmed; plaintiffs to pay all costs.

On Application for a Rehearing.

PER CURIAM.

In an application for a rehearing, appellants contend that their pleadings are broad enough to warrant consideration of their alternative contention that the testator lacked the capacity to make an olographic will. We do not so view the petition which, both by allegation and prayer, seeks an annulment of the will on the sole ground of forgery.

Since we find that we are unable to consider appellants' alternative contention, they may litigate this question in new proceedings under proper allegations.

The application for a rehearing is refused.