152 So.2d 627 (1963)
Succession of Alfred Green FAGGARD, deceased.
No. 9915.
Court of Appeal of Louisiana, Second Circuit.
April 1, 1963.
Bethard & Bethard, Coushatta, for appellants Walton Crawford et al.
Colvin & Hunter, Mansfield, for administrator, Riemer Calhoun, Jr.
Howard E. Spann, Mansfield, for absent heirs, Clyde J. Doyal et al.
Cook, Clark, Egan, Yancey & King, Shreveport, for appellees James H. Doyal et al.
Before GLADNEY, AYRES, and BOLIN, JJ.
*628 AYRES, Judge.
Concerned on this appeal is the validity, vel non, of a purported last will and testament of the deceased, Alfred Green Faggard. The appeal is from a judgment sustaining an exception of no cause and of no right of action to the petition wherein the probation of the purported will was sought. The judgment appealed is based on a finding and a conclusion that the document sought to be probated as a will was not in fact a will, contained no language indicative of an intention of the deceased to make a disposition of his property at his death, and was invalid, null, and void as a will.
The record discloses that Alfred Green Faggard, a resident of and domiciled in DeSoto Parish, Louisiana, died January 21, 1962. His wife predeceased him. He left neither ascendants nor descendants; his only heirs were the children of a predeceased sister. Following Faggard's death, a succession was opened and Riemer Calhoun, Jr., was appointed administrator. On August 31, 1962, while the estate was under administration, the proponents of the purported will petitioned for its probation.
The document consists of a single sheet of paper bearing the date "Sep 17-57," underneath which notation, and continuing on the reverse side of the sheet, was a list of names and notations as to certain property. On the lines to the right of the names are certain figures, such as "1 000 00," "1 500 00," "2 500 00," "500 00," "10 000 00," "8 000 00," "33 000 00," et cetera. Near the bottom of the reverse side of the document is inscribed the name "Alfred Green Faggard." This sheet of paper was contained in an envelope on which had been written "Copey of will." This notation was neither dated nor signed.
The bases of the attack upon the alleged will are: that the document contains no words or language indicative of a testamentary disposition; and, moreover, that (1) it does not purport to be a last will and testament by which Faggard disposed of his property at his death; (2) it is not clothed with any of the forms prescribed for an act of last will and testament; and (3) it does not manifest any intention of the party to make a will.
The legal requirements essential to the validity of an act of last will and testament are prescribed in the Civil Code. For instance, LSA-C.C. Art. 1469 provides:
"A donation mortis causa (in prospect of death) is an act to take effect, when the donor shall no longer exist, by which he disposes of the whole or a part of his property, and which is revocable."
LSA-C.C. Art. 1571:
"A testament is the act of last will clothed with certain solemnities, by which the testator disposes of his property, either universally or by universal title, or by particular title."
LSA-C.C. Art. 1570:
"No disposition mortis causa shall henceforth be made otherwise than by last will or testament. Every other form is abrogated.
"But the name given to the act of last will is of no importance, and dispositions may be made by testament under this title or under that of institution of heir, of legacy, codicil, donation mortis causa, or under any other name indicating the last will, provided that the act be clothed with the forms required for the validity of a testament, and the clauses it contains, or the manner in which it is made, clearly establish that it is a disposition of last will.

"Thus an act of last will, by which an individual disposes of his property or of part thereof, in any manner whatsoever, whether he has or has not charged any one with the execution of his last will, is considered as a testament, if it be, in other respects, clothed with the formalities required by law." (Emphasis supplied.)
*629 Thus, a document, to constitute one's last will and testament, must, by its own language, show on its face that it purports to be the last will and testament of the person whereby he disposes of his property at his death.
There is no language whatsoever in the document here intended for probation indicating an intent on the part of the decedent to dispose of his property at his death. None of the parties listed are named or referred to as legatees, heirs, or beneficiaries. Nor does the instrument contain the words "give," donate," "will," "bequeath," "devise," or any other word establishing or even indicating that it is a disposition of a last will.
Before a document may be admitted to probate, it must purport, on its face, to be a last will and testament. Succession of Elliot, 27 La.Ann. 42; Succession of Brand, 162 La. 880, 111 So. 267; Succession of Ravain, 168 La. 413, 122 So. 274.
Moreover, in the absence of a testamentary intent, which must be established by the language of the document itself, there is no will. Oxley v. Clay, 7 Rob. 425; Succession of Foucher, 18 La.Ann. 409; Theall v. Theall, 7 La. 226, 26 Am.Dec. 501; Succession of Patterson, 188 La. 635, 177 So. 692; Succession of Brewster, La.App. 4th Cir., 1962, 145 So.2d 597 (writs denied). Thus, it appears to have been well settled in the jurisprudence of this State that, for a document to constitute one's last will and testament, the document must show, on its face, that the party intended such document to constitute a testamentary disposition.
Notwithstanding the fact that the document contains no language indicating an intent on the part of the decedent to dispose of his property at his death, it is contended that the words "Copey of will," inscribed on the envelope, should be given consideration in the determination of Faggard's intent, and, if the language there employed, together with the language of the other document, is not sufficient to determine the intention of the decedent, then extrinsic evidence may be resorted to in order to determine such intent. Cited are: Succession of Ehrenberg, 21 La.Ann. 280; Lyon v. Fisk, 1 La.Ann. 444.
In the first of these cases the document was entirely written, dated, and signed by the testator, in which he said: "Mrs. Sophie Loper is my heiress." A year later, the testator wrote on the back of the document, in his own handwriting, dated, and signed by him, "The legatee's name is correctly spelt Loeper." Thus, it was not necessary to go beyond the writings of the testator to determine his intention.
In the second of the cases cited, the question was whether or not two wills, the disposition of which were not repugnant to each other, should be given effect or whether the last will precluded recognition of the first. While the testator, a few hours before his death, expressed his desire that both wills be recognized, the ascertainment of the intention of the testator, through verbal proof of such expression, was not necessary to a disposition of the issue presented. The wills were such that both could be given effect, and, thus, the testator's intent clearly appeared in the language of the testaments themselves.
Testaments which do not expressly revoke prior wills annul in the latter only such of the dispositions therein contained as are incompatible with the new ones, or which are contrary to or entirely different from them. LSA-C.C. Art. 1693.
The proponents of the will, however, suggest that by parol evidence the decedent's intent that the document constitute his last will may be established under LSA-C.C. Art. 1715, which provides that
"When, from the terms made use of by the testator, his intention can not be ascertained, recourse must be had to all circumstances which may aid in the discovery of his intention."
*630 The provisions of this article do not authorize a resort to verbal testimony as one of the circumstances which may aid in the discovery of the testator's intention.
Testaments, whether in the olographic form or whether nuncupative or mystic, must be in writing. LSA-C.C. Arts. 1575, 1588.
Moreover, the former custom of making verbal testaments was abrogated. LSA-C. C. Art. 1576.
Thus, it was held in the Succession of Maginnis, 158 La. 815, 104 So. 726, in construing Arts. 1715, 1575, and 1576 of the Civil Code, that
"* * * it is clear that parol proof of the verbal declarations of the testator, made at the time of the making of the codicil in this case, cannot be received as one of the `circumstances which may aid in the discovery of his intention.'"
As was well stated in Succession of Rusha, 158 La. 74, 103 So. 515.
"Testamentary dispositions can be made only in writing in the form and manner prescribed by law for wills. Hence testamentary dispositions can never be established, as such, by any amount of parol evidence as to the verbally declared intentions of the deceased. And it is but one step from the explaining of a written testamentary disposition by proof of the verbal declarations of the testator, to the establishing of a verbal testamentary disposition; the line of demarcation between the two being very fine, if indeed it exists at all."
See, also: Hessmer v. Edenborn, 196 La. 575, 199 So. 647; Succession of Wallis, 203 La. 874, 14 So.2d 749.
We find nothing in the Succession of Pujol v. Manning, 221 La. 466, 59 So.2d 456, cited by the proponents of the will, that deviates from the aforesaid jurisprudence. In that case, the validity of an olographic will was attacked on the ground of forgery. Parol evidence was admitted of four persons who saw the testator write, date, and sign the purported will. The evidence was admitted not to establish that the document was intended by the testator as a will but to establish that the testator could write, and did entirely write, date, and sign the document in his own hand.
There are no words or language contained in the document presented for probation which would indicate that the decedent intended to make a last will and testament; nor does the document indicate any intention on his part to dispose of property upon his death. The fact that there was, on the envelope in which the document was contained, a notation, "Copey of will," is a matter of no importance.
In the Succession of Bechtel, La.App. Orleans, 1958, 99 So.2d 495, the court was presented with two pieces of paper which were found in one envelope. One of the pieces of paper contained what could have been considered dispositions, but was unsigned. The other slip of paper, which was signed, stated: "The enclosed is my last will." It was held that no valid will could be created by combining the two documents.
Thus, under the jurisprudence of this State, the rule is well established that a document submitted for probate must, in the language used in the document itself, establish its conformity with the law as an act of donation mortis causa, and, moreover, evidence the intention of the party to make a will and to dispose of his property. Testimony as to verbal declarations by a testator about his intention to make such a will or to dispose of his property is inadmissible.
The document tendered for probate in the instant case contains no language indicating a testamentary disposition. Thus, the document, purporting to be a last will and testament, is null and void; such nullity is patent upon the face of the document and *631 may be so decreed in disposing of an exception of no cause of action urged in an action for its probation. Succession of Lewis, La.App. 2d Cir., 1962, 140 So.2d 791 (writs denied).
The judgment appealed is therefore affirmed at appellants' cost.
Affirmed.