to the defendant's main business of general contracting.

That the conclusion we have reached was clearly the intention of the legislature is, in our opinion, strengthened by the identical provisions in both the state act (Section 54) and the city ordinance (Section 56) that a "a person, firm or company, having more than one place of business, shall pay a separate license for *each place of business.*" (Italics ours.)

For the reasons assigned the judgment of the lower court is annulled and set aside and it is now ordered, adjudged, and decreed that there be judgment in favor of the City of New Orleans and against the W. Horace Williams Company in the sum of $620, as an additional amount on its occupational license tax for the year 1946, together with interest thereon from March 1, 1946, at the rate of 2% per month until paid, and 10% attorney fees on both the principal and the interest, as well as all costs of this proceeding.

33 So.2d 655

**Succession of CARRE.**

No. 38745.

Jan. 12, 1948.

Lathrop & Bowman, Robert M. Lathrop and W. Hullin Bowman, all of New Orleans, for plaintiff-appellant.

Phelps, Dunbar, Marks & Claverie and Edward E. Finlay, Jr., all of New Orleans, for defendant appellee.

HAWTHORNE, Justice.

The only question presented by this appeal is whether a will dated prior to the

adoption of a child becomes invalid or is revoked by this adoption.

Decedent, Hutson Carre, was married to Edward Wellington Charlton, Jr., in 1929, and of this marriage no children were born. On January 7, 1947, the parties to this marriage adopted a minor child whom they named Rebecca Charlton. Thereafter, on March 21, 1947, Mrs. Hutson Carre Charlton died in the Parish of Orleans, leaving a last will and testament in olographic form, dated July 16, 1941, which last will and testament was admitted to probate.

Walter W. Carre, Jr., acting in his capacity as undertutor of the adopted child, Rebecca Charlton, instituted a suit to have declared null and void the last will and testament of the decedent on the ground that it was invalidated by reason of the adoption of the child subsequent to its confection. Upon this premise, petitioner alleged that decedent died intestate, and that the minor Rebecca Charlton should be recognized as the sole and only heir of the decedent and as such entitled to the full ownership of decedent's entire estate.

After the case had been put at issue by answer filed by Edward Wellington Charlton, Jr., universal legatee under his wife's will and tutor of the adopted child, the lower court in due course rendered judgment dismissing plaintiff's suit at his costs. From this judgment an appeal has been taken to this court.

Article 1705 of the Revised Civil Code of 1870 provides: "The testament falls by

the birth of legitimate children of the testator, posterior to its date."

In Succession of McRacken, 162 La. 443, 110 So. 645, 647, in which the same question now before us was presented to this court, the court in reviewing the history of Article 1705 of our Code said: "Our opinion is that the act of adoption * * * did not have the effect of annulling * * * [the] will. The statement in article 214 of the Civil Code, that an adopted person shall have all of the rights of a legitimate child in the estate of the person adopting him, is not the same as to say that a testament falls by the adoption of a child, merely because article 1705 of the Code says that a testament falls by the subsequent birth of a legitimate child. Article 1705 was adopted as article 1698 in the Code of 1825, the French text being: 'Le testament est caduc, quand il est survenu des enfants, depuis qu'il a été fait.' The article was not taken from the Code Napoleon, but perhaps from the Partidas, book 6, law 20, title 1, viz.: 'A will is revoked by the posterior birth of a child or by another person being adopted by the testator.' The reason why the provision relating to adoption was not enacted as the law in Louisiana was that at that time there was no provision in the statutes for the adoption of children. The Legislature afterwards made provision for the adoption of children by the Act 64 of 1868, p. 77, which was retained as section 2328 of the Revised Statutes and as article 214

in the revision of the Civil Code in 1870. There was then perhaps as good reason for the redactors of the Civil Code, in 1870, to provide that the adoption of a child should annul a will previously made by the adoptor as there was for making the provision that the birth of a legitimate child should annul a will previously made by the parent; but the fact remains that the redactors of the Code, in 1870, after the Legislature had enacted the law providing for the adoption of children, did not see fit to declare that the adoption of a child should annul a will previously made by the adoptor; and the Legislature has not seen fit to make such provision. There is no doubt that article 1698 of the Code of 1825, now article 1705 of the Revised Civil Code, was not intended to apply to the adoption of a child, because, as we have said, adoption was not recognized in the law when the article of the Code was enacted. * * *"

Appellant concedes that that case is the only one squarely in point, but contends that subsequent legislation has changed the result reached by us in the McRacken case, particularly Act No. 318 of 1944, amending Section 16, Article IV, of the Constitution of 1921, ratified by the electorate on November 7, 1944, and also Act No. 154 of 1942, and argues that the effect of this legislation has placed adopted children in the same status as legitimate children, as that term is used in Article 1705, or that the words "legitimate children" in the article include or contemplate "adopted children."

The pertinent part of Section 16 of Article IV of the Constitution of 1921, as amended, reads: "No law shall be passed abolishing forced heirship; provided, that children lawfully adopted shall have the same rights in the successions of the persons adopting them, as children who are forced heirs, to the exclusion of the father and mother of the adoptive parent, or either of them, who are forced heirs, but the party adopted shall acquire no right of succession to the property of relatives of the party adopting. * * *"

This provision was undoubtedly enacted in the form of a constitutional amendment because the legislators considered a constitutional provision necessary in view of the prohibition of the Constitution against any law abolishing forced heirship, inasmuch as the amendment makes an adopted child a forced heir to the exclusion of the father and mother of the adoptive parent, or either of them.

Apparently the amendment was brought about by the decision in Succession of Dielman, 155 La. 496, 99 So. 416, in which this court in interpreting Article 214 of the Revised Civil Code reached the conclusion that a surviving parent was a forced heir even though the deceased had an adopted child.

We do not think that the above article of the Constitution, as amended, had the

effect of placing adopted children in the same status as legitimate children as that term is used in Article 1705 of the Code. It had the effect only of giving adopted children the same rights in successions of the persons adopting them as children who are forced heirs to the exclusion of the father and mother of the adoptive parent or either of them. It does not, however, clearly or in express terms provide that adopted children shall have the same rights in the successions of the persons adopting them as forced heirs or the same rights as legitimate children. In the absence of such an express declaration we see no valid reason why our decision in the McRacken case, decided over 20·years ago, should be disturbed or why we should read into Article 1705 the term "adopted children", as the Legislature could very easily, by express legislation, have provided that a prior will should fall by the adoption of a child. For us to read into Article 1705 the expression "or by the adoption of a child", as appellant contends we should, we should be, in effect, legislating or making law rather than interpreting the plain provisions of the article.

Act No. 154 of 1942, also relied upon by appellant as legislation which has placed adopted children in the same status as legitimate children as that term is used in Article 1705, is an act providing the method and procedure of adopting children under 17 years by the several classes of persons described therein, and is pro-

cedural in its nature and therefore does not confer any substantive rights upon adopted children so as to bring them within the term "legitimate children" as used in Article 1705.

After a careful analysis of the constitutional amendment and the act of the Legislature cited and relied upon by appellant, we have reached the conclusion that they in no way affect or supersede the result reached by us in the McRacken case, supra. Therefore, to arrive at the result contended for by appellant it would be necessary for us to overrule the McRacken case, which we are not disposed to do, being of the opinion that it is sound and correct.

For the reasons assigned, the judgment appealed from is affirmed; appellant to pay all costs.