HIGHTOWER, Judge.
Joyce Nadine Calhoun (“defendant”) appeals a judgment revoking the will of Arnold L. Irvin, Jr. For the reasons hereinafter expressed, we affirm.
FACTS
In 1965 Irvin and defendant began living together, and in 1979 he bequeathed all of his property to her in a statutory will, which also named her as executrix. Five years later, in 1984, Irvin adopted 18-year-old Dorsey Lavell Schuler, defendant’s grandson whom she had raised from his birth.
Irvin, domiciled in Bienville Parish, unfortunately died on August 29,1987. Some 15 months later, Tommy Lee Irvin and Laura Lee Irvin Kennedy (“plaintiffs”), claiming to be his children, commenced the present suit against defendant to nullify the will. In particular, the action contended that the will contained an invalid donation under LSA-C.C. Art. 1481 (now repealed) in that all property was left to an individual with whom Irvin had lived in open concubinage. The suit additionally asserted that Irvin’s 1984 adoption of Schu-ler revoked the will in accordance with LSA-C.C. Art. 1705.
Defendant answered, denied that plaintiffs were Irvin’s children, and alleged that Schuler did not desire the will’s invalidation. The unconstitutionality of Art. 1705 was also urged.
Following trial, the district court found plaintiffs to be children of the deceased, but their contention, that defendant and Irvin had lived in open concubinage, was rejected. However, since the will made no provision for the subsequently adopted *920 child, its revocation was mandated by the plain language of Art. 1705. Hence, judgment was signed decreeing the will’s invalidity, and this appeal ensued.
DISCUSSION
A.
Defendant has advanced several arguments in an attempt to demonstrate manifest error in the trial court’s conclusion that plaintiffs are Irvin’s children. However, the applicable legal precepts now foreclose such a challenge to plaintiffs’ parentage.
The husband of the mother, of course, is presumed to be the father of all children born or conceived during the marriage. LSA-C.C. Art. 184. Also, a suit for disavowal of paternity must be filed within 180 days after the husband learned or should have learned of the birth of the child, unless reasons beyond his control prevented timely filing of suit. LSA-C.C. Art. 189.
At trial, plaintiffs introduced a “Certificate of Marriage” which disclosed that Irvin and Mary L. Carroll were married in Cheyenne, Wyoming, on April 23, 1949. In addition, plaintiffs’ Wyoming birth certificates established their births to Mrs. Irvin on September 2, 1949 and April 7, 1951. Finally, a decree of the district court in Cheyenne, Wyoming granted Mary Lou Irvin a divorce from Arnold L. Irvin on April 23, 1951.[1]
The evidence confirms, then, that plaintiffs were born to their mother during her marriage to Irvin. Also, the record contains no indication of a timely and successful suit by Irvin to disavow paternity, or his inability to prosecute such an action. Hence, the trial court was correct in finding plaintiffs to be Irvin’s children.[2]
B.
LSA-C.C. Art. 1705 provides as follows: A testament is revoked by the subsequent birth of a legitimate child to the testator or by the subsequent adoption or legitimation of a child by the testator, unless the testator has made testamentary provision to the contrary or has made testamentary provision for such child.
Despite such plain and unambiguous language, defendant asserts the trial court erred in revoking the will in accordance with the article’s provisions.
Defendant argues that the terms of Art. 1705, a statute intended to protect the subsequently born or adopted child, may be waived by an intended beneficiary, especially when that individual is a major. At trial, the adopted son, Schuler, testified that he wished to renounce or waive the article’s provisions. Of course, if the will is revoked and the succession passes by intestacy, he will inherit one-third of the estate. LSA-C.C. Art. 888. By contrast, since he “anticipates” inheriting all of defendant’s estate when she dies, he apparently contemplates faring better if the will is sustained with defendant taking all of Irvin’s property. Even if the will is valid except to the extent of providing the LSA-C.C. Art. 1493 legitime, Schuler seemingly still feels his position is preferable to intestacy. He immediately would receive a child’s forced portion and then expect to later inherit all of Irvin’s disposable portion from defendant upon her death. Defendant maintains, that if no principle of law precludes the subsequently adopted child from waiving Art. 1705, then the other children, whom the article was not meant to protect, should not be permitted to disallow that course of action.
Further, it is argued, even if Schuler’s renunciation is deemed ineffective or impermissible, the article does not apply un *921 der the facts of this case. Defendant contends that Irvin, in fact, did provide for the subsequently adopted child, albeit in a contingent capacity. Specifically, the will stated that were defendant to predecease Irvin, his estate was to be distributed according to the law of intestacy. In such a situation, of course, Schuler would inherit. Also, inasmuch as Schuler was, at age 18, a major when adopted, the assertion is posed that he was not a “child” as intended by the article.
While Schuler believes the will’s revocation to be to his disadvantage, we observe that his reasoning is based on a series of debatable assumptions concerning the manner in which defendant may decide to preserve and ultimately dispose of her estate. More importantly, though, the recent jurisprudence has characterized the provisions of Art. 1705 as absolute and imperative. Succession of Meaux, 558 So.2d 273 (La.App. 3rd Cir.1990); Succession of Austin, 527 So.2d 483 (La.App. 5th Cir.1988), writ denied, 532 So.2d 135 (La.1988); Succession of Troxler, 323 So.2d 924 (La.App. 4th Cir.1975), writ denied, 328 So.2d 104 (La.1976). Thus, despite defendant’s contentions, the article’s mandate may not be waived.
Contrary to defendant’s assertions, the will under scrutiny makes no testamentary provision for Schuler. While children are heirs under the rules of intestate succession, LSA-C.C. Arts. 880 et seq., Irvin’s will provides for such a distribution of his estate only if defendant predeceased him. Hence, no unequivocal provision was made for Schuler such that his inheritance, at Irvin’s death, would be absolute and dependent on no other condition. Moreover, the prerequisite to Schuler’s inheriting under the will was not fulfilled. The testamentary clause in question, therefore, is insufficient to prevent the will’s revocation. Finally, in Succession of Quartara-ro, 139 So.2d 277 (La.App. 4th Cir.1962), the Fourth Circuit held, in a well-reasoned and persuasive opinion, that an adopted person of any age is encompassed by the term “child” contained in Art. 1705.
C.
Defendant also has put at issue the constitutionality of Art. 1705. In particular, she contends that some of the results of the will’s revocation, such as the disal-lowance of the testator’s choice of an executor, are capricious and whimsical and unrelated to the article’s legitimate purpose of protecting children born or adopted subsequent to execution of the testament.
Of course, statutes are presumed constitutional, and judicial self-restraint is appropriate when statutes are under constitutional attack. Sherman v. Cabildo Const. Co., 490 So.2d 1386 (La.1986). Importantly, the party attacking the constitutionality of a statute has the burden of proof. City of Lake Charles v. Chaney, 468 So.2d 1191 (La.1985); Parish of Jefferson v. Roemer, 539 So.2d 97 (La.App. 5th Cir.1989), writ denied, 541 So.2d 873 (La.1989).
The foundation of Art. 1705 is an unwillingness to assume that a testator meant to exclude his unborn (or his yet unadopted) children from participation in his estate because of a previously executed will. Succession of Carbajal, 154 La. 1060, 98 So. 666 (1923). Similarly, we are unwilling to assume that a testator, following the birth or adoption of a child, would invariably desire to maintain unchanged those portions of his will not directly pertaining to the disposition of property. Thus, we do not perceive capricious or whimsical results flowing from the operation of Art. 1705, and none have been satisfactorily demonstrated.
CONCLUSION
For the foregoing reasons, the judgment of the trial court is affirmed. All costs are to be borne by defendant/appellant.
AFFIRMED.

. Although the judgment of divorce does not identify Irvin as "Jr.," it is clear that he was, in fact, the party involved inasmuch as the petition, answer, and decree all acknowledge a marriage date of April 23, 1949.

. In the event that Wyoming law arguably may be pertinent in resolving the paternity issue, our analysis would not change. No party has cited or relied upon Wyoming law, and the applicable foreign law thus is presumed the same as our own. Franks v. Louisiana Health Service and Indemnity Co., 382 So.2d 1064 (La.App. 2d Cir.1980); Cambre v. St. Paul Fire and Marine Ins. Co., 331 So.2d 585 (La.App. 1st Cir.1976), writ denied, 334 So.2d 434, 435 (La.1976).